1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF CALIFORNIA

7
8

9   GEORGE SOULIOTES,

10                          Plaintiff,

11          v.

12   CITY OF MODESTO, *et al.*,

13                          Defendants.

14

15

16

Case No. 1:15-CV-00556-LJO-SKO

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

(ECF No. 64)

17                      **BACKGROUND**[1]

18          In this action, Plaintiff George Souliotes ("Plaintiff") seeks relief pursuant to 42 U.S.C.

19   § 1983 ("§ 1983") for alleged deprivations of his constitutional rights under color of law related to the

20   criminal investigation that led to his sixteen-year term of incarceration in state prison.[2] Plaintiff

21   subsequently filed a habeas petition pursuant to 28 U.S.C. § 2254, in which he successfully argued

22   that trial counsel in his state court proceedings rendered ineffective assistance of counsel.[3] *See* ECF

23   Nos. 1 (initial complaint) & 42 (First Amended Complaint ("FAC")). Plaintiff named the following

24

25   ───────────

[1] Because the Court recounted in detail the factual and procedural background of this case in its previous order addressing Defendants' earlier motion to dismiss, *see* ECF No. 61, the Court now provides only the background information relevant to the pending motion to dismiss. The Court incorporates by reference the factual and procedural background outlined in the Court's previous order.

26

27   [2] In brief, Plaintiff was tried twice for arson and three counts of murder with respect to his alleged involvement with a fire that occurred on a rental property he owned on January 15, 1997. His first trial ended in a mistrial. During his second trial, his counsel did not present as many witnesses in his defense, and he was convicted and sentenced to life imprisonment.

28   [3] *Souliotes v. Grounds*, No. 1:06-cv-00667 AWI MJS HC, 2013 WL 875952 (E.D. Cal. Mar. 7, 2013), adopted as modified by *Souliotes v. Grounds*, No. 1:06-cv-00667 AWI MJS HC, 2013 WL 1563273 (E.D. Cal. Apr. 12, 2013).

Defendants: City of Modesto, Modesto Police Department ("MPD"), Modesto Fire Department ("MFD"), MPD Sergeant Mike Harden, MPD Detective Roger Lee, MPD Detective Dick Ridenour, MPD Detective John Buehler, MPD Detective Dodge Hendee, MPD Officer Joe Pimentel, MFD Investigator Bob Evers, MFD Investigator Tom Reuscher, and Does 1-10 (collectively, "Defendants"). FAC ¶¶ 10-13. Specifically, the FAC alleged against Defendants: (1) a denial of Plaintiff's constitutional right to a fair trial in violation of the Due Process Clause of the Fifth and Fourteenth Amendments by suppressing and/or destroying exculpatory evidence, fabricating evidence, using suggestive eyewitness methods, and "reckless[ly]" investigating him (*Id.* ¶¶ 57-62); (2) malicious prosecution (*Id.* ¶¶ 63-72); (3) conspiracy (*Id.* ¶¶ 73-80); (4) supervisory liability (*Id.* ¶¶ 81-86); and (5) municipal liability against the City of Modesto under *Monell v. Dep't. of Soc. Servs. of New York*, 436 U.S. 658 (1978) (*Id.* ¶¶ 87-90).

Defendants moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim. ECF No. 47. On June 29, 2016, the Court granted Defendants' motion—dismissing three of Plaintiff's claims without leave to amend and his remaining claims with leave to amend. ECF No. 61. The Court also cautioned Plaintiff that he would only have one more opportunity to amend, that Plaintiff should only amend "if amendment [would] not be futile based on the law and holding in [the Court's order]," and that it was giving Plaintiff "the proper direction for the last time." *Id.* at 28.

Plaintiff filed his Second Amended Complaint ("SAC") on July 13, 2016. ECF No. 62. Defendants timely moved to dismiss the SAC pursuant to Rule 12(b)(6) (ECF No. 64) and concurrently filed a request for judicial notice (ECF No. 65). Plaintiff failed to file an opposition, and Defendants filed their reply. *See* ECF No. 67. This matter is suitable for decision on the papers. E.D. Cal. L.R. 230(g). For the reasons that follow, the Court GRANTS Defendant's motion and DISMISSES WITHOUT LEAVE TO AMEND the SAC in its entirety.

## I.      STANDARD OF DECISION

A motion to dismiss pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable

legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, a plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

Finally, in ruling on a Rule 12(b)(6) motion, "[a] court may take judicial notice of [undisputed] matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the

3

complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Moreover, the court is permitted to consider matters that are proper subjects of judicial notice under Rule 201 of the Federal Rules of Evidence: facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Lee*, 250 F.3d at 668.

## II.   DISCUSSION

### A.  Defendants' Request for Judicial Notice

In support of their motion to dismiss, Defendants have requested that the Court take judicial notice of certain portions of the transcripts of Plaintiff's state court proceedings. ECF No. 65. Because these items are undisputed matters of public record and proper subjects of judicial notice under Rule 201, the Court GRANTS Defendants' request. The Court additionally notes that it will reference certain items Defendants submitted in their previous request for judicial notice (ECF No. 47), which contains additional transcripts of Plaintiff's state court proceedings. These items are also proper subjects of judicial notice and are relevant to the determination of the pending motion to dismiss insofar as the Court takes notice only that certain statements were made without expressing any opinion as to the truth of these statements. *Lee*, 250 F.3d at 689-90.

### B.  Claims Previously Dismissed Without Leave to Amend

In its previous order addressing Defendant's motion to dismiss the FAC, the Court dismissed the following claims without leave to amend on the grounds that amendment would be futile: (1) Plaintiff's allegation that Defendants violated his due process rights based on "suggestive eyewitness identification"; (2) Plaintiff's allegation that Defendants violated his due process based on "reckless investigation"; and (3) Plaintiff's malicious prosecution allegation. ECF No. 61 at 18, 19, 21.

Because the SAC re-asserts these very same allegations, ECF No. 62 at 15-18, the Court now reiterates its previous determination that these allegations are incurably deficient, for the reasons set forth in its June 29, 2016 order. To be clear, Plaintiff's allegations regarding "suggestive

1   eyewitness identification," "reckless investigation," and malicious prosecution are DISMISSED

2   WITHOUT LEAVE TO AMEND.

3   C.  **Claims Previously Dismissed With Leave to Amend**

4        **1.  Due Process**

5        The Court dismissed but granted Plaintiff leave to amend his allegations that the individual

6   Defendants violated his due process rights through suppressing and/or destroying exculpatory

7   evidence and fabricating evidence. ECF No. 61 at 13 & 18.

8            **a.  Suppression/Destruction of Exculpatory Evidence**

9        This allegation pertains to information provided by Ms. Monica Sandoval, who lived down

10  the street from 1319 Ronald Avenue, Plaintiff's rental property where the fire that led to Plaintiff's

11  arson charge occurred. SAC ¶ 23. Ms. Sandoval informed Defendant Pimentel that she had been

12  standing on her balcony before the fire began and observed a recreational vehicle ("RV") drive

13  down the street several times, and that shortly before the fire began, the RV parked across the street

14  from 1319 Ronald Avenue, and the driver emerged, carrying what appeared to be a pillowcase. *Id.*

15  She further reported that she observed the driver go back to the property, subsequently return

16  empty-handed, and that he drove the RV away, returning one more time before he left. *Id.* Ms.

17  Sandoval described the driver as "being in his 30s or early 40s, as wearing glasses, and as clothed

18  in blue denim jeans, a blue and white checkered Pendleton-type shirt, and dark shoes," while

19  qualifying that she did not get a clear look at him and was unlikely to be able to identify him. *Id.*

20  Defendants Lee, Ridenour, Pimentel, and Reuscher met again with Ms. Sandoval for follow-up

21  interviews. *Id.* ¶ 25. Plaintiff alleges that at least one of the interviews with Ms. Sandoval was

22  audio-recorded, and during at least one of the interviews, Ms. Sandoval made a sketch illustrating

23  the RV she had observed. *Id.* Plaintiff further alleges that Defendants initially prepared, but then

24  withheld reports that documented Ms. Sandoval's initial description of the RV (which Plaintiff

25  alleges does not match his own RV). *Id.* ¶ 28-29. Plaintiff claims that the audio recording, sketch,

26  and initial police reports were exculpatory, in that they did not match either Plaintiff or his RV, that

27  none of the evidence was disclosed to Plaintiff during his criminal prosecutions, and they have

28  never been produced in the 16 years that have since elapsed. *Id.* ¶¶ 25, 29, 40-44.

In seeking to dismiss this claim, Defendants first argue that the stricter standard set forth in *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) and *California v. Trombetta*, 467 U.S. 479, 489 (1984) should apply, rather than the standard set forth in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). ECF No. 64 at 13. According to Defendants, although Plaintiff alleges that the non-disclosed evidence has "either been lost/destroyed, or withheld (implying they might still exist), the latter is implausible in light of the other allegations in his complaint," and that "[i]t strains credulity to assume that, despite over 16 years of criminal and related proceedings, the allegedly non-disclosed evidence still exists." *Id.* It is clear that *Trombetta* and *Youngblood*, rather than *Brady*, apply when potentially exculpatory evidence is no longer available on account of being lost or destroyed. *See United States v. Drake*, 543 F.3d 180, 1089-90 (9th Cir. 2008). Upon careful evaluation of the SAC, the Court agrees with Defendants that it is implausible that the sketch, recording, and initial police report still exist. *See Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) ("Establishing the plausibility of a complaint's allegations … is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense'") (quoting *Iqbal*, 556 U.S. at 679). The SAC's conclusory allegation that Defendants withheld the sketch and audio recording, without further factual support, is "merely consistent with [Defendants]' liability," and therefore, "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 566 U.S. at 678.

Accordingly, the Court applies the standard in *Youngblood* and *Trombetta*. Under this standard, for the loss or destruction of evidence to amount to a constitutional violation, the evidence "must possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that [Plaintiff] would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.

The Court finds that the allegations in the SAC fail for the same reasons the FAC failed—even assuming that the sketch, audio recording, and police reports that documented Ms. Sandoval's initial recounting of the RV possessed apparent exculpatory value, Plaintiff has not alleged facts that suggest that the information contained in them  were "unique … Rather, his facts suggest a situation in which many individuals would be competent to discuss what was said in the interview

and what was drawn in the picture." ECF No. 61 at 13; *cf. United States v. Cooper*, 983 F.2d 928, 932 (9th Cir. 1993) (finding a due process violation where the government failed to preserve uniquely-configured exculpatory evidence for which there was 'no adequate substitute'"). Beyond the same allegations contained in the FAC, the SAC adds only the following additional factual allegations to support Plaintiff's suppression/destruction of evidence claim:

> The sketch drawn by Ms. Sandoval did not match Plaintiff's RV, because his RV was not at the scene at the time Ms. Sandoval viewed a different RV. Further, the recording of her interview would have captured Ms. Sandoval describing the RV she had seen, including details about the RV she was describing that did not fit Plaintiff's RV.
> …
> Because the description of the vehicle that Ms. Sandoval had initially given did not match Plaintiff's [RV], the Individual Defendants withheld their reports documenting Ms. Sandoval's initial description
> …
> [T]he Defendants' withholding of Ms. Sandoval's sketch of the RV that she had seen prevented Plaintiff from demonstrating to the jury that her sketch of the RV she had seen did not resemble his RV at all, which would have impeached her identification of his RV as well as her identification of him at trial.
> …
> Likewise, the recording of Ms. Sandoval's description of the RV she actually saw, which differed from Plaintiff's would have similarly impeached Ms. Sandoval's trial testimony.
> …
> In the same vein, Defendants' withheld police reports, which differed from Plaintiff's RV in material respects, would have enabled Plaintiff to impeach Ms. Sandoval as well as any of the Defendants' police officers who testified inconsistently with that report
> …
> Given that this case was so closely balanced, based on the evidence and Plaintiff's first jury's inability to reach a verdict, any additional impeachment evidence tending to negate the evidence of Plaintiff's guilt would have tipped the balance. The withheld evidence regarding Ms. Sandoval's initial description of the RV would certainly have led to Plaintiff's acquittal at the second trial.

SAC ¶¶ 26, 29, 41-44. These additional factual allegations do not alter the Court's conclusion that the sketch, audio recording, and initial police report are not of such a nature that Plaintiff "would be unable to obtain comparable evidence by other reasonably available means," because Plaintiff indisputably had the opportunity to cross-examine[4] Ms. Sandoval and the investigators who interviewed her during his criminal proceedings. *See Trombetta*, 467 U.S. at 489-90 (destruction of

---

[4] *See, e.g.*, ECF No. 47-3 at 26-52 (transcript of Ms. Sandoval's testimony on cross-examination on February 17, 1999). 57-59 (excerpted transcript of Defendant Pimentel's testimony on cross-examination on February 22, 1999).

breathalyzer samples did not violate due process because there were reasonably available, comparable means to challenge the validity of the test results through cross-examination and expert testimony); *accord Elmore v. Foltz*, 768 F.2d 773, 774 (6th Cir. 1985) (recognizing that although "no better tool exists for impeaching [a witness] than a tape directly contradicting him," "[u]nder *Trombetta*, though, all that matters is that some reasonable alternative means exists for attempting to do what one would have attempted to do with the destroyed evidence"). As the Court noted in its previous order, the availability of Ms. Sandoval and the investigators at trial presents a reasonable alternative to the recording, sketch, and initial police reports. ECF No. 61 at 13. The new factual allegations are completely irrelevant to the standard set forth in *Trombetta*. Therefore, the Court now DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's allegation that Defendants violated his due process rights through the suppression or destruction of the sketch, recording, and initial police reports.

### b.  Fabrication of Evidence

Relatedly, the SAC alleges that Individual Defendants fabricated evidence against Plaintiff by: (1) withholding reports that documented Ms. Sandoval's initial description and then submitting a falsified police report documenting their conversation with Ms. Sandoval about the RV, but changing her description to make it more closely resemble Plaintiff's RV (SAC ¶29); (2) making false representations that Plaintiff's financial situation was "precarious," that Plaintiff "had a vendetta against his tenants," and that Plaintiff "had grown increasingly desperate because he was unable to sell the property" (*Id.* ¶ 31); and (3) with regard to MFD Defendants Reuscher and Evers, coming to the opinion that the fire was an arson despite there being "absolutely no credible evidence indicating that the fire was an arson rather than an accidental fire" (*Id.* ¶ 33).

The deliberate fabrication of evidence may serve as a basis for a due process claim where defendants (1) continue their investigation of a plaintiff "despite the fact that they knew or should have known that he was innocent" or (2) use "investigative techniques that were so coercive and abusive that they knew or should have known those techniques would yield false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). However, "[t]hese methods are not themselves independent causes of action." *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir.

2015). "Rather, they are methods of proving one element—intent—of a claim that the government deliberately fabricated the evidence at issue." *Id.* "Fundamentally, the plaintiff must first point to evidence he contends the government deliberately fabricated." *Id.*

### i.   Ms. Sandoval's Testimony

In its previous order, the Court found that the FAC's allegations that Defendants altered Ms. Sandoval's testimony failed "at the threshold level" because the FAC did not identify the evidence or testimony in question and presented only a vague allegation that a description in a police report did not exactly match Ms. Sandoval's original description. ECF No. 61 at 17. The Court reasoned that even assuming the truth of Plaintiff's allegations that Ms. Sandoval's original description differed from the police report that was ultimately submitted and used to prosecute Plaintiff, Plaintiff was not entitled to a presumption that the difference resulted from a deliberate fabrication, given the absence of factual details and silence on the magnitude and extent of the alleged changes. *Id.*

The SAC contains only slight and ultimately negligible modifications to the contents of the FAC in regard to this allegation. Specifically, Plaintiff changed "reports" to "report," and added the allegation that Individual Defendants withheld the ostensibly accurate report documenting Ms. Sandoval's initial description and submitted a falsified police report that changed Ms. Sandoval's description of the RV she observed to make it more closely resemble Plaintiff's RV, and thereby falsely implicate him as an arsonist. SAC ¶ 29. As Defendants observe, "Plaintiff fails yet again to identify any *specific* report(s) [that were fabricated] in the SAC," nor does he adequately allege the magnitude and extent of any deliberate changes to Ms. Sandoval's testimony. ECF No. 64 at 19 (emphasis added). Thus, even after considering these additional allegations, the Court again arrives at the conclusion that there is insufficient factual support upon which to infer that Defendants are liable for deliberate fabrication under *Devereaux*. It is impossible to infer from the SAC that Defendants knew or should have known that Plaintiff was innocent or that their investigative techniques on Ms. Sandoval were so coercive and abusive that they should have known these techniques would yield false information. *See* 263 F.3d at 1076. The Court therefore DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's allegation that Defendants falsified a report pertaining

9

1  to Ms. Sandoval's testimony.

2                    **ii.      Plaintiff's Financial Situation and Relationship with His Tenants**

3          Similarly, the Court's previous order found insufficient Plaintiff's allegations that

4  Defendants fabricated evidence about his financial situation and relationship with his tenants being

5  "precarious" because he failed "to identify *which statements* were misrepresented and *what*

6  *evidence* was falsified with respect to these allegations." ECF No. 61 at 15-16 (emphasis in

7  original). "Thus, the claim fail[ed] at the threshold level because it does not identify the evidence in

8  question," and "it is not clear what basis [Plaintiff] had for concluding that such evidence was

9  falsified or fabricated." *Id.* at 16. Although the FAC had alleged that at the time of his fire,

10 Plaintiff's finances were "healthy and secure," that he had a positive relationship with his tenants,

11 and the rental property was "valuable" because Plaintiff was actively negotiating its sale, the Court

12 found that "it [was] not unconstitutional for Defendants to come to alternative conclusions in their

13 reports absent evidence of intent to falsify evidence." *Id.*

14         The SAC adds only the following paragraph to support this claim:

15             The fabrications detailed above were no accident. Before Plaintiff's arrest, Defendants had
16             no reason to believe that Plaintiff's finances were anything but healthy and secure.
               Defendants also knew that Plaintiff was on good terms with his tenants despite the eviction
17             proceedings. Indeed, no witness reported anything to the contrary to the Defendants.
               Moreover, the Defendants knew that the property was valuable, thus negating any motive
18             for Plaintiff to destroy his own property. Indeed, Defendants had no reason to believe that
               Plaintiff's finances were precarious and any suggestion to the contrary was a complete
19             fabrication by the Defendants.

20

21 SAC ¶ 32.

22         Defendants point out that the new allegations in the SAC are belied by the transcripts of

23 Plaintiff's state court proceedings. ECF No. 64 at 22. As to the allegation that Defendants had "no

24 reason to believe that Plaintiff's finances were anything but healthy and secure," Defendants point

25 to the testimony of Michael J. Marks, an auditor with the U.S. Treasury Department, who reviewed

26 Plaintiff's financial and property records pursuant to a stipulation between the prosecutor and

27 Plaintiff's defense attorney. ECF No. 65-1; ECF No. 47-4. While the Court disagrees with

28 Defendants' characterization that Mr. Marks "testified at length that Plaintiff was suffering

financially" (ECF No. 64 at 22), there are portions of Mr. Marks' testimony indicating that Plaintiff

may have had some financial concerns around the time leading up to the fire in January 1997—

specifically, that Plaintiff had made a somewhat risky $30,000 transaction that would potentially

limit his cash flow until January 1, 1999 (ECF No. 47-4 at 44-45) and that Plaintiff's cash flow was

declining from 1992 to 1997 (*Id.* at 62). As to the allegation that Defendants knew that Plaintiff was

on good terms with his tenants despite the eviction proceedings, Defendants point to the testimony

of Margaret Ann Warner, one of the neighbors, who stated that she observed an altercation occur

between Plaintiff and one of his tenants approximately two days before the fire, and told Defendant

Buehler what she had seen. *See* ECF No. 65-1 at 16-20. Defendants also point to the testimony of

defense witness Thomas Bonte, who stated that Plaintiff and his tenants had a dispute about the

amount of rent that had been paid. *See id.* at 27.

More importantly, however, the SAC's additional allegations fail to cure the defects noted

by the Court in its earlier order because they still fail to identify which exact statements were

misrepresented and what evidence was falsified with respect to Plaintiff's financial situation and

relationships with his tenants. While the new allegations attempt to suggest that Defendants had the

intent to falsify evidence against Plaintiff, they remain "bare assertions," whose "conclusory nature

… disentitle[s] them to the presumption of truth." *Starr*, 652 F.3d at 1214 (quoting *Iqbal*, 556 U.S.

at 681). Even assuming the truth of the allegations that Plaintiff was on good terms with his tenants

or that his finances were healthy, the Court agrees with Defendants that these matters "are not facts

but subjective opinions." ECF No. 64 at 23. Therefore, the Court reiterates its finding that it was

not unconstitutional for Defendants to disbelieve Plaintiff's characterization of the events, given the

fact that Plaintiff has failed to allege sufficient facts demonstrating their intent to falsify evidence.

*See Masody v. Klopot*, No. 14-CV-04562 MEJ, 2015 WL 2164852, at *4 (N.D. Cal. Mar. 19, 2015)

(citing *Devereaux*, 263 F.3d at 1075, for the proposition that "there is no constitutional right to have

a criminal investigation carried out in a particular way"). The Court now DISMISSES WITHOUT

LEAVE TO AMEND Plaintiff's allegation that Defendants fabricated evidence about his financial

situation and relationship with his tenants.

//

### iii.   Arson Investigation

The Court's previous order also dismissed Plaintiff's allegation that MFD Defendants Reuscher and Evers fabricated evidence in conducting their arson investigation because Plaintiff failed to meet the requirements listed in *Devereaux*, 263 F.3d at 1076, and only alleged "the existence of evidence that [MFD Defendants] knew or should have known that [Plaintiff] was innocent or that they used investigative techniques that they knew or should have known would yield false information." ECF No. 61 at 16.

In relation to this claim, the SAC adds the following allegations

Defendants Reuscher and Evers had no reason to believe that the fire was an arson. Prior to Plaintiff's arrest, there was absolutely no credible evidence indicating that the fire was an arson rather than an accidental fire. Specifically, Defendants Reuscher and Evers knew based on their training that the fire was not an arson
…
Well before the fire at Plaintiff's property, the National Fire Protection Association (NFPA) Standards Council appointed a Technical Committee to address the scientific principle applied during investigations into residential and commercial fires. In 1992, as a result of the work of the Technical Committee, the NFPA promulgated a 'Guide for Fire and Explosion Investigations' (NFPA 921). That 1992 Guide set forth the precise technology and science that established the falsity of the MFD Defendant Officers' conclusions and debunked the so-called science the MFD Defendant Officers used to frame Plaintiff in 1997.
…
These standards and training were known to Defendants Reuscher and Evers before Plaintiff's arrest.

SAC ¶¶ 33, 62, 63. The SAC's allegations attempt to satisfy the *Devereaux* requirements in that they appear to suggest that Defendants Reuscher and Evers knew or should have known that Plaintiff was innocent and did not comply with NFPA-standard investigative techniques. Nevertheless, these allegations nevertheless do not support a plausible inference that Defendants Reuscher and Evers may be found liable under *Devereaux* because the allegations still lack the requisite specificity as to what evidence these Defendants fabricated to implicate Plaintiff as an arsonist. Plaintiff cannot satisfy *Devereaux* merely by alleging that the MFD Defendants ignored NFPA standards in their investigation, because he has not shown how the NFPA standards, if used, would or should have made it clear to the MFD Defendants that the fire was not an arson. *Cf. Sommer v. United States*, 713 F. Supp. 2d. 1191, 1201 (S.D. Cal. 2010) (denying defendants'

motion to dismiss a *Devereaux* claim because the plaintiff had made "specific, non-conclusory allegations" that defendants had continued their investigation of her despite knowing significant forensic facts that pointed to her innocence and going against the opinion of "several qualified independent forensic toxicologists"). Again, construing these allegations in the light most favorable to Plaintiff, they suggest at most that Defendants Reuscher and Evers knew, but did not follow the proper scientific standard for investigating arson. And again, the allegation that Defendants Reuscher and Evers "knew" that the fire was not arson alone is conclusory, and does not support a plausible inference that Defendants Reuchser and Evers had an intent to fabricate evidence. *See Eclectic Properties*, 751 F.3d at 1000 ("these facts do not allow us to make the Plaintiffs' preferred inference that Defendants had the necessary specific intent to defraud Plaintiffs"). As the Court previously noted, "to the extent [MFD Defendants] *may* have been wrong about the fire being caused by arson, the facts alleged suggest that this conclusion would have been the result of inadequate training at most, not an intent to deceive. [MFD Defendants] would not have violated Plaintiff's due process rights even if their conclusions resulted from a 'careless or inaccurate' investigation.'" ECF No. 61 at 16 (citing *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003)). The SAC's new allegations fail to address the deficiencies noted by the Court in its previous order. Therefore, the Court now DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's allegation that Defendants fabricated evidence in conducting their arson investigation against him.

### 2.  Conspiracy and Supervisory Liability

The Court previously dismissed Plaintiff's conspiracy and supervisory liability claims for failing to allege facts to support a plausible inference that Defendants are liable under these theories. ECF No. 61 at 22-23. Because Plaintiff has added no further factual allegations to support these claims in the SAC, and the Court had admonished him that he would have only one more opportunity to amend, the Court now DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's conspiracy and supervisory liability claims.

### 3.  *Monell*

Finally, the Court's previous order dismissed Plaintiff's *Monell* claims, finding that Plaintiff had failed to allege sufficient facts to support any of the four theories of liability under *Monell*,

while also providing him with specific guidance as to how to plead these claims properly. *Id.* at 26-27. The only change that Plaintiff made in the SAC in relation to his *Monell* claims was to add the following sentence: "Pleading in the alternative, Defendant's training in fire investigation was so deficient that the failure to train the Defendants gives rise to municipal liability on the part of the City of Modesto. SAC ¶ 33. This additional sentence, however, like many of the SAC's additions analyzed above, is an unsupported conclusory allegation not entitled to the presumption of truth. *See Starr*, 652 F.3d at 1214. Therefore, the Court DISMISSES WITHOUT LEAVE TO AMEND Plaintiff's *Monell* claims.

### CONCLUSION AND ORDERS

For these reasons, Defendants' unopposed motion to dismiss (ECF No. 64) is GRANTED in its entirety, and the Court hereby DISMISSES the SAC (ECF No. 62). Because amendment would be futile, dismissal shall be WITHOUT LEAVE TO AMEND. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:   **October 18, 2016**            **/s/ Lawrence J. O'Neill**
                                    UNITED STATES CHIEF DISTRICT JUDGE